Kathryn G. Spelman (Cal. Bar No. 154512)
Daniel F. Fingerman (Cal. Bar No. 229683)
Jing H. Cherng (Cal. Bar No. 265017)
William H. Stewart (Cal. Bar No. 287782)
Mount, Spelman & Fingerman, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose CA  95110-2740
Phone: (408) 279-7000
Fax:    (408) 998-1473
Email: kspelman@mount.com, dfingerman@mount.com,
       gcherng@mount.com, wstewart@mount.com

Counsel for Plaintiff Cyber Switching

United States District Court
Northern District of California

| | |
|---|---|
| Cyber Switching Patents, LLC d/b/a Cyber Switching<br><br>                    Plaintiff,<br>vs.<br><br>Avocent Huntsville Corp. and Liebert Corporation<br><br>                    Defendants. | Case No. 4:14-CV-02683-PJH<br><br>**Second Amended Complaint for Patent Infringement**<br><br><br>**Jury Trial Demanded** |

**COMPLAINT**

Plaintiff Cyber Switching Patents, LLC d/b/a Cyber Switching ("Cyber Switching") files its Complaint against Defendants showing this Court as follows:

**Nature of the Action**

1.  This is an action for patent infringement, arising out of Defendants' infringement of U.S. Pat. No. 7,550,870 issued on June 23rd, 2009, and entitled *Method and Apparatus for Remote Power Management and Monitoring* (the "'870 Patent") and U.S. Pat. No. 7,672,104 entitled *Current Protection Apparatus and Method* (the "'104 Patent"). Copies of the '870 Patent and the '104 Patent are attached hereto as Exhibits A and B, respectively. Collectively, the '870 Patent and the '104 Patent are referred to as the "Patents-in-Suit".

**The Parties**

2.  Plaintiff is a Limited Liability Company, organized and existing under the laws of the State of California, with its principal place of business in San Jose, California.

3.  Upon information and belief, Defendant Avocent Huntsville Corp. ("Avocent") is a corporation organized and existing under the laws of the State of Alabama. Upon information and belief Avocent does business in the State of California by, among other things, offering for sale and selling its iPDU family of products, as defined below, within the State of California, and within this district.

4.  Upon information and belief, Defendant Liebert Corporation ("Liebert") is a corporation organized and existing under the laws of the State of Ohio. Upon information and belief Liebert does business in the State of California by, among other things, offering for sale and selling its iPDU family of products, as defined below, within the State of California, and within this district.

**Jurisdiction and Venue**

5.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1338.

6.  This Court has personal jurisdiction over the Defendants by virtue of these companies'

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

developing, offering for sale and selling their respective iPDU families of products, defined

below, within the State of California and, upon information and belief, by these companies

deriving significant revenue from such sales.

7.   Venue is proper in this Court pursuant to 28 U.S.C. §1400.

**Intradistrict Assignment**

8.   This case is appropriate for district-wide assignment under Civil Local Rule 3-2(c). Assignment

to the Oakland Division is appropriate because a substantial part of the events that give rise to the

claims asserted in this complaint occurred in Alameda County.

**Operative Facts**

**Charles H. Reynolds and Cyber Switching: First to Offer Intelligent Power Distribution**

**Units to Data Centers**

9.   Charles H. Reynolds, the founder and owner of Cyber Switching - and inventor of the Patents-in-

Suit - began pioneering power distribution technologies into data centers[1] as early as 1994. Over

time he intimately understood the evolving trends of data center operations. Data centers rose to

prominence during the dot com boom of the 1990's. Companies needed fast network connectivity

and nonstop operation to deploy systems and establish an Internet presence. New technologies

and practices were designed to handle the operational requirements of such large-scale operations.

10.  Data center computing racks are fed power through power distribution units ("PDU"). PDUs are

similar to, but much more sophisticated than, the retail "power strip" that one commonly uses at

their desk.  The most basic PDUs ("basic PDUs") provide standard electrical power to computing

devices, but have no monitoring or remote access capabilities. For large data centers this basic

functionality is insufficient, as they are inefficient, unable to monitor power, and have no ability

---

[1] A data center is a facility used to house computer systems and associated components, such as
telecommunications equipment, storage systems, routers, and switches. It generally includes
redundant or backup power supplies, redundant data communications connections, environmental
controls (e.g., air conditioning, fire suppression) and various security devices. Large data centers are
industrial scale operations using as much electricity as a small town.

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1    to report or resolve power problems, if discovered.

2    11. As data centers grew in size, so did their energy costs and overhead cost of administration. Based

3    on these fundamental ideas of increasing data center energy efficiency and lower costs of

4    management through remote administration, Cyber Switching was formed. As early as 2003, Mr.

5    Reynolds developed and sold the first Intelligent PDU ("iPDU") to address these issues. Cyber

6    Switching iPDUs are, and have been consistently, marked with Cyber Switching's patent and

7    pending patent application numbers.

8

9    12. Smart PDUs, also known as intelligent PDUs ("iPDUs"), address these deficiencies. For example,

10   intelligent PDUs  (1) identify high power consuming equipment, (2) issue alarms when power

11   overloading occurs or may occur, (3) identify erratic power consumption, and (4) monitor power

12   usage against existing capacity. Cyber Switching began selling these multiple lines of iPDU

13   related products including the ePower family, Dualcom PLUS intelligent Power Management

14   systems, CS Series, E Series, Galaxy Series, Enterprise Management Console Software, PM8

15   Series, EFX Series Power Management Module, M series, and the PS Series.

16   13. iPDUs are able to add this additional value over basic PDUs by adding a number of features.

17   iPDUs typically include a built in display for local reporting, as well as web connectivity for

18   remote status reporting. iPDUs also include remote monitoring and management of individual

19   power outlets, and devices, via standard network connectivity. Many iPDUs also include the

20   ability to trigger alerts using standard email protocols or via Simple Network Management

21   Protocol Management Information Bases ('SNMP MIBs").   Many iPDUs also allow for active

22   control of electronics, for example, rebooting a computing server remotely. The iPDU is an

23   essential element, which gives information technology ("IT") administrators the ability to adjust

24   and monitor power demands from offsite locations. Below, are pictures of Cyber Switching

25   products.

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000



14. As the data center power distribution market matured, large power companies, and smaller competitors, entered the market, directly competing with Cyber Switching, and practicing its patented inventions.

**The Patents-in-Suit**

15. Cyber Switching is the owner by assignment of all rights, title, and interest in the Patents-in-Suit.

16. The '870 Patent describes a novel invention relating to a method and apparatus for intelligent power supply devices and/or methods that can be used for power supply control and/or monitoring in various information and/or network appliances.

17. The '104 Patent generally describes inventions relating generally to a current protection apparatus and more particularly to a current protection apparatus including a programmable characteristic and current protection method.

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

**Causes of Action**

18. Cyber Switching incorporates by reference as if fully set forth herein the allegations contained above.

19. Mr. Reynolds, beginning in as early as 2003 and up to 2007, discussed potential business arrangements, such as joint ventures, partnerships and acquisition of Cyber Switching, with Avocent representatives.  In these meetings, the parties also discussed Cyber Switching's intellectual property assets, including the inventions claimed in the Patents-in-Suit and the status of the related patent applications.  As a result, Avocent had actual knowledge of the Patents-in-Suit as early as 2003; but certainly no later than the original complaint's filing in this case on June 10, 2014.

20. In connection with those discussions beginning in 2003, Avocent was provided with product samples that were marked patent pending. These markings provided Avocent, and the entire world, with further notice of Cyber Switching's patent rights. As each patent issued, Cyber Switching updated its patent markings to show the number of each issued patent. These markings provided Avocent, and the entire world, with further notice of Cyber Switching's patent rights.

21. In 2009, Avocent owned a patent application that was in prosecution, which eventually issued as U.S. Patent 7,689,677. In January 2009, this Avocent patent application was rejected by the patent examiner as anticipated by Cyber Switching's published application which matured into the '870 Patent. In June 2009, this published application did mature into the '870 Patent. In July 2009, Avocent submitted to the USPTO a detailed argument which distinguished its own patent application from the '870 Patent. This argument required a detailed analysis of the '870 Patent. Accordingly, Avocent made a detailed analysis of at least the '870 Patent in the summer of 2009.

22. A reasonable manufacturer in Avocent's position would also study related patents and patent applications owned by the same manufacturer that owned the '870 Patent over which Avocent's application had been rejected. Therefore, upon information and belief, Avocent studied all of

Mount, Spelman & Fingerman, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

1     Cyber Switching's patents and patent applications in late 2009.

2   23. In October 2009, Avocent was acquired by Emerson Electric Company ("Emerson"), at a time

3       when Avocent's analysis of Cyber Switching's patents was fresh in Avocent's mind. Emerson's

4       next 10-Q filing with the SEC discussed how Avocent would extend the reach of the Emerson

5       corporate family into new areas.  That corporate family included Liebert, which was acquired by

6       Emerson in 1987.  Emerson, Liebert and Avocent are therefore a corporate family.

7

8   24. A corporate family naturally shares information that would benefit the parent and/or its acquired

9       entities.  Upon information and belief, Avocent shares information with Emerson (its parent) and

10      Liebert (its sister).  Avocent, upon information and belief, has shared information about the

11      Patents-in-Suit with Liebert.  As a result, Liebert had actual knowledge of the Patents-in-Suit as

12      early as 2010; but certainly no later than the original complaint's filing in this case on June 10,

13      2014.

14
15  25. Upon information and belief, Defendants have no good faith belief that the Patents-in-Suit are

16      invalid.

17  26. Defendants, within the United States, manufacture, use, offer for sale, or sell iPDUs, as defined

18      by the Patents-in-Suit *supra*, including but not limited to the following iPDU families of

19      products:  Avocent's Power Management PM 3000 PDU family, Liebert's MPH Managed Rack

20      PDU family, Liebert's MPH2 Managed Rack PDU family, and Liebert's MPX Adaptive Rack

21      PDU family.

22
23  27. Defendants know that there iPDUs are an important component of the claimed inventions in that,

24      for example, they embody the inventive features of remote power monitoring and control.

25      Avocent knows that its iPDUs are also an important component of the claimed inventions in that,

26      for example, they embody the inventive feature of programmable current protection.

27  28. Defendants know that components of their iPDUS are especially made and especially adapted for

28      use in an infringement of the Patents-in-Suit, and are not staple items or commodities of

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1    commerce suitable for substantial non-infringing use. E.g., non-infringing, basic PDUs have been

2    and continue to be less expensive options for Defendants' customers. Defendants' parent,

3    Emerson, offers a family of non-infringing, basic rack PDUs under the DI-STRIP brand, which

4    do not provide for remote power monitoring and control, or programmable current protection.

5    29. Based on publically available material, Defendants acted and continue to act with the specific

6    intent to induce infringing use of their iPDUs by, among other things, marketing the value of their

7    iPDUs' intelligent (and infringing) features in contrast to basic PDUs. As a result, Defendants'

8    customers chose and are choosing Defendants' iPDUs over basic PDUs for those intelligent (and

9    infringing) features. Defendants' customers therefore have used and are currently using

10   Defendants' iPDUs in an infringing manner.

11   30. Defendants' iPDUs, as shipped to their customers, incorporate the infringing components as

12   standard features, enabled for use. Defendants therefore knew and know that it is highly probable

13   their actions encouraged and are encouraging infringement.

### Count One

### Infringement of the '870 Patent

31. Cyber Switching incorporates by reference as if fully set forth herein the allegations contained

    above.

32. By reason of some or all of the foregoing, Defendants have directly infringed and continue to

    directly infringe the '870 Patent, including at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 11 and 12

    thereof.

33. By reason of some or all of the foregoing, Defendants have indirectly infringed and continue to

    indirectly infringe the '870 Patent, including at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 11 and 12

    thereof, by inducing infringement and contributing to infringement.

34. Despite Defendants' actual knowledge of the '870 Patent, Defendants have continued their

    infringing activities. Defendants' infringement is therefore deliberate and willful, and

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1    Defendants' actions show a reckless disregard to the infringing nature of their activities.

2    35. Cyber Switching has suffered damages as the direct and proximate result of Defendants'

3    infringement of the '870 Patent.

### Count Two

### Infringement of the '104 Patent

36. Cyber Switching incorporates by reference as if fully set forth herein the allegations contained

above.

37. By reason of some or all of the foregoing, Avocent has directly infringed and continues to directly

infringe the '104 Patent, including at least claims 8 and 11 thereof.

38. By reason of some or all of the foregoing, Avocent has indirectly infringed and continues to

indirectly infringe the '104 Patent, including at least claims 8 and 11 thereof,  by inducing

infringement and contributing to infringement.

39. Despite Avocent's actual knowledge of the '104 Patent, Avocent has continued its infringing

activities.  Avocent's infringement is therefore deliberate and willful, and Avocent's actions show

a reckless disregard to the infringing nature of its activities.

40. Cyber Switching has suffered damages as the direct and proximate result of Avocent's

infringement of the '104 Patent.

### Prayer for Relief

WHEREFORE, Cyber Switching prays that this Court:

(1) Enter judgment in favor of Cyber Switching and against Defendants for infringement,

including willful infringement as appropriate, of the '870 Patent, as set forth above;

(2) Enter judgment in favor of Cyber Switching and against Avocent for infringement, including

willful infringement as appropriate, of the '104 Patent, as set forth above;

(3) Award damages to Cyber Switching in an amount to be proven at trial for Defendants'

infringement, pursuant to 35 U.S.C. § 284;

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

(4) Declare this to be an exceptional case pursuant to 35 U.S.C. § 285 and award Cyber Switching

its attorney's fees in this action;

(5) Award the costs of this action to Cyber Switching;

(6) Try this case before a jury; and

(7) Allow Cyber Switching to have such other and further relief as the Court deems just and

proper.

Date: October 22, 2014                                     */s/ Kathryn G. Spelman*
                                                          Mount, Spelman & Fingerman, P.C.
                                                          Counsel for Plaintiff Cyber Switching

## Demand For Jury Trial

Cyber Switching demands a jury trial on all issues so triable.

Date: October 22, 2014                                     */s/ Kathryn G. Spelman*
                                                          Mount, Spelman & Fingerman, P.C.
                                                          Counsel for Plaintiff Cyber Switching